Hearing this morning is BP American Production Company v. Davis. It is stocked at 22-8024. Counsel, we're prepared to hear your arguments. Good morning. I'm Sarah Desherry, here on behalf of BP. Can you pull the mic up and closer? Sure. I'd like to reserve two or three minutes for rebuttal, if that's possible. This case raises issues of first impression under the Royalty Simplification and Fairness Act, or RISPA. Ma'am, you need to pull it. This case raises issues of first impression under the Royalty Simplification and Fairness Act, otherwise known as RISPA, which mandates that the Department of the Interior issue a final departmental-level decision in administrative appeals involving royalty orders, like the ones before the court here, within a specific period of time. Counsel, let me, not against your time, stop it. We're not going to shoot or anything like that. I'm kind of hard of hearing, so when you speak real fast, I don't catch most of what you're saying. So just take your time, and we'll follow along with you, and you'll be able to do it good, and I'll be able to hear it well. So thank you if you can do that, please. Will do. The first issue before the court concerns the scope of the court's jurisdiction in this situation, where the Department of the Interior ran out of time to issue its own final departmental-level decision. Let me interrupt you there, please. If we all agree that this involves this court's jurisdiction, would you also agree that Chevron deference has no place in interpreting this statute? I do agree with that, yes. And the D.C. Circuit made that very clear in the Murphy case, which is cited in the briefs, and which has actually been cited in this court for that very principle. So under 30 U.S.C., Section 1724H, the court's jurisdiction is limited here to only the specific monetary obligations, royalty obligations in this case, that are for a principal amount of $10,000 or more. The second issue before the court concerns the well-established principle that silent agency action is not defensible under the APA. These issues have pretty broad implications for the federal royalty program and the entire federal leasing program. And before I get into each of the issues, I want to make a couple of points that apply to both issues. First is the point that Judge McHugh already raised, which is that deference is not appropriate here because we're dealing with a jurisdiction-conferring statute. Second, the circumstances here, where the Department of the Interior ran out of time to issue a reasoned decision, are entirely of Interior's own making. In developing the appeal framework for royalty orders, the Department of the Interior established a two-step appeal procedure for these types of orders. It didn't have to do that under the statute, but that's what it did. So BP first had to appeal to the owner or director, and then from the director's decision, had to appeal up to the IVLA, which has the authority to issue department-level decisions. In other contexts, Interior has shortcut that process by providing only for one stage of appeal, which obviously is a faster proceeding. But, I mean, whose fault it is really doesn't affect how we apply the statute. I mean, aren't we going to look at the plain language of the statute and figure out the secretary shall be deemed to have issued a final decision in favor of the secretary, which decision shall be deemed to affirm those issues for which the agency rendered a decision prior to the end of such period, as to any monetary obligation, the principal amount of which is $10,000 or more, and the appellant shall have a right of judicial review of such deemed final decision. That's what we have to do, right? That's exactly right. Okay. As I read your argument, you want to write out entirely what I call the dependent clause, which decision shall be deemed to affirm those issues for which the agency rendered a decision. What does that language mean in Provision B? So the language that you're pointing to in Provision B, which refers to a deemed final decision in Interior's favor, limits the scope of that deemed final decision only to the monetary obligations at issue that are for a principal amount of $10,000 or more, and then it also gives the appellant the right to judicial review of that deemed final decision. So the way that that provision works, it sort of has three components. The first is that there's a deemed final decision in favor of Interior with respect to specific, but not all, specific monetary obligations at issue in a given administrative proceeding. The second is that in addition to upholding certain monetary obligations in Interior's favor, that deemed final decision is also deemed to have upheld the issues determined by the O&R director in favor of Interior. And then third, the appellant, BP here, is entitled to a right to judicial review. Let's talk about the first one. Let's break it down. Following up with Judge McHugh, which is affirm those issues for which the agency rendered a decision. Isn't the issue the agency rendered a decision simply one of the timing, the effective date? In other words, the agency didn't opine on $10,000 or less because that argument wasn't ever made. That's correct, Judge Phillips. But that argument would have been appropriate before the administrative agency because that argument is specific to the consequences of what happens when the government runs out of time to issue a decision. Well, runs out of time, the government may well say, we choose to run out of time. We're happy with the result by not deciding because the statute tells us what the result will be and we're comfortable with that. It's not like there was necessarily negligence or carelessness. Well, Your Honor, the statute imposes an obligation on Interior to issue a final decision within the time, within the 33 months. Or else. Or else here's what happens. It's like intestacy. I might be perfectly happy to have my property passed by intestacy. That doesn't mean I'm negligent in not getting a will. The statute provides consequences for Interior's decision. I don't know consequences. It provides a result. Here's what happens if you don't. That's right. It does provide a result for what happens if Interior doesn't issue a final decision within that time frame. And one of those consequences, to the extent that the deemed final decision in that circumstance is deemed to have upheld, or have been decided in favor of the Interior here to have upheld the Director's decision, then that also triggers a right to judicial review of the appellant, BP here. Well, is it, tell me if this is wrong. My understanding is in front of the agency, the first look at that, Director Davis, the position of BP was not based on less or greater than $10,000, but it was only based on effective date. And so the Director Davis said, well, you know how she ruled. And she said the effective date is the filing and the approval and so forth. You lose BP. And so BP had lost. And it never made the argument that you're making to us now, which is this, we're going to break each one of these royalty payments down and we're going to say every one that is less than $10,000 is necessarily reversed by the meaning of that language. Your Honor. Is that all correct? It's correct that the owner or Director did not address that argument. Because it wasn't raised. Well, it wasn't raised because it wasn't, the circumstances weren't triggered for it to be brought up. Well, let's just take one of the royalty payments and say it's $9,000. And the agency says, you owe $9,000. And BP had said, no, we don't. We only owe $7,000. Then that would be properly brought up. That would be decided. And then it would come to us. And if IBLA had not ruled on that specific one, you'd win. Because it's less than $10,000. But it would have been raised. Here, none of that was ever raised. That's my problem with your position. And that's what I'm needing help from you with. Sure, Your Honor. The distinct nature of each of these individual royalty obligations is a creation of statute, really. And each obligation was triggered when production happened from specific federal leases over a seven-month period back in 2012. And there were three lease products at issue here. So, you know, those circumstances are what triggered the royalty obligation. And that's very clear from the enclosure six that's attached to the original order. And that's amended, of course, in the Director's decision. That enclosure breaks down each obligation in just the way that I've just said. By lease, by production month, and by product. So the nature of these individual – excuse me. The nature of these royalty obligations as individual is not something that was before the owner or director because it didn't need to be. That is the way that the royalty obligations are triggered under the statute, under the regulations, under the lease. They are individual in nature. Well, if that's true, then think where we are. We're going to have the same thing repeating itself with the IBLA having to go through every one of the less than $10,000 obligations even though it was not disputed. And if it doesn't do so, then the bulk of the amount owed is forgiven or not owed any longer. The whole idea of these statutes was to facilitate the process, to make it easier, and not to get way behind on the royalty audits and all of that. That just seems counterintuitive to me that we're going to have this silent effort where it doesn't have to be raised by BP and then BP can swoop in to district court and to us and say, aha, we got them because they didn't ever rule on something we hadn't argued, the less than $10,000 of specific royalty payments. Your Honor, again, this issue of the less than $10,000 and over $10,000 is really just an issue of what happens. That comes up only when the Department of the Interior runs out of time to issue a decision. It doesn't come up in the context of administrative appeals before that date. Why can't it? Why couldn't you have challenged one of these royalty payments and said it shouldn't be $9,000, it should be $7,000? BP could have challenged one of them, but also the Department of the Interior could have issued individual orders for each one of them. Then we'd be looking at the principal amount for each individual royalty obligation for determining the $10,000 threshold. Far from streamlining. That becomes a morass, it seems to me. It does. I agree with that. For administrative efficiency, the Department of the Interior, it's a practice, kind of scoops up multiple individual obligations and includes them in one order. But that practice, that practice for administrative efficiency, scooping up individual obligations and covering them in one order, doesn't transform the individualized nature of these obligations into something singular. Well, the fact that the decision wasn't a bunch of individuals' decisions but was a single decision stating a single monetary obligation that was due to BP, isn't that some indication that we're dealing with the Part B and not Part A of the statute here? We are dealing with Part B, Your Honor. I agree that we're dealing with Part B. But the issue is what is the meaning of the statutory phrase, monetary obligation? And in response to your question, I want to point out that Congress could have made that $10,000 threshold depend on the amount of an order. It could have made it depend on the amount of the decision or the amount of the administrative proceeding. But it didn't do that here. Well, and it also could have said monetary obligation as defined by month, product, and lease, which it didn't. It didn't have to, Your Honor, because the term obligation is already defined in the statute. And so that term obligation is – there's already a reference in the statute for what that means. But it doesn't say month, product, lease. And you have – in fact, when you report – I mean, the best you could get, I think, if you look at how it's reported would be just lease production by month and monetary amount, which is 30 U.S.C. 17-02-26. So here we're dealing with BP's worldly payments on condensate and on processed gas. There are three lease products. And when those three lease products are reported, they are each reported individually. Condensate is reported based on a specific product code, a specific line item. The same thing is true for the liquids and for the residue. So each individual – How you report it doesn't necessarily define what it's meant in this particular provision, does it? I mean, you've got reporting obligations that may or may not be the same. The reporting obligations align with the individualized nature of these royalty obligations. Also, the definition of order to pay is consistent with this in that it provides that in each order to pay, the ONRR has to identify each obligation by month, by lease, and by amount. The only way that you can identify the obligation by amount is to break it down into these three products. So that I'm sure, what is your position on 4.903? Your Honor, 43 CFR 4.903 is Interior's interpretation of a jurisdiction-conferring statute. And it's well-established, including with reference specifically to Section 17-24 we're dealing with here, that agency interpretations of that statutory provision really have no place because it is a jurisdiction-conferring statute. So my position is that that regulation is not particularly relevant to the resolution of this bill. It is not binding on us? Can we rely on it for persuasive value and say, oh, that makes sense to us, we agree, that's how the statute should be interpreted? Your Honor, in the Murphy case, the D.C. Circuit found it inappropriate to rely on that provision, and it didn't do so. It looked at the statutory language only, and that's as far as the court needs to look in this case. But the statutory language does talk about the issue. It does talk about the issue. And you would agree here there was a single legal issue. The underpayments at issue, the alleged underpayments at issue, actually relate to several different substantive issues. There was a single defense that BP raised in its admission. The single defense was, we transferred the leases so we're not responsible for the royalties. And the response was, they're not transferred until we approve the transfer. So for that period of time, you're still responsible. That seems like a single issue to me. That was a response to a single defense. But the finding of underpayment for each one of those individualized royalty obligations that's identified in that original Enclosure 6, each one of those had specific reasons for that finding. And that's clear in the attachment to the order and also in the audit paperwork that's included in the record. And there's one other point that I'd like to make in response to your question. Well, the attachment to the order is the exhibit, and you've got two versions of it, right? So the Director's decision amended Enclosure 6 to the order. It didn't replace it. It amended it. Well, it amended it and relied on one that doesn't have the detail that you rely on in your brief. Well, I don't think it replaced Enclosure 6. I think it has to be considered with Enclosure 6 to understand the manner in which the Director's decision changed the order, which was specifically to exclude from the scope of the order specific monetary obligations. But the Director didn't go through lease by lease, month by month, product by product, and get out a calculator to determine whether it was an overcharge or undercharge or underpayment, overpayment. It made a decision as to who was responsible for a specific time period. Once it said BP was responsible, it charged BP with everything for that time period. That's correct, Your Honor, but that's because of the way that BP challenged the order and its appeal. Again, each individual obligation, each month, each product, and each lease, there's an individual obligation for each month, product, and lease. And each one, each allegation of underpayment came from a different substantive issue. I realize that I'm over time, and I don't want to – I want to be respectful. And you are over time, but what I will do is I'll give you a minute for rebuttal, and we'll extend the government's time if it needs it. Thank you. Thank you. I just want to be equal on the time. And so if you go over a couple of minutes, we won't broth at the mouth. But if you're 15 minutes, that's okay, too. Thank you, Your Honor. Thank you. Good morning, and may it please the Court, Justin Heminger for the Department of the Interior. This case raises the question of statutory interpretation about the meaning of any monetary obligation in Section 1724 of the Royalty, Fairness, and Simplification Act. We believe Congress's intent is clear from the plain language of the statute. When Interior issues one order that resolves one issue and requires a lessee to pay money, that order imposes a monetary obligation. And if that monetary obligation is for $10,000 or more, then the decision under H2B is deemed decided in Interior's favor. Now here BP appealed one order. That's the Director's decision. That decision resolved one liability issue, and that was the question of the lease transfer date or who was responsible for those leases during this time period. And that decision required BP to pay one monetary obligation. The obligation was $905,348.24, much more than $10,000. Now the Board did not issue a decision within the applicable timeframe, and so under Section 1724 H2B, there is one deemed decision in favor of Interior. Because the statute is clear on those facts, we think that Interior should, the District Court's judgment should be affirmed in this case. Just covering some of the points that the Court has already asked about today, Judgment Q, I'd like to address the dependent clause. So we believe that the dependent clause is consistent with Interior's interpretation of the plain language of the statute. So that clause says that the decision shall be deemed to affirm those issues for which the agency rendered a decision prior to the end of such a period. Well, but you don't, and I've struggled with this dependent clause, but you don't have to, you can still have, it's deemed final as to any monetary obligation, right? And so you could say there's two things this is doing. One is that it's final and you get appellate review for a monetary obligation over $10,000. And secondly, it's final as to any legal issue decided, and you get appellate review of that if it's over $10,000. So what I'm saying is it's not necessarily that the monetary obligation is cabined by the issue. I agree with that. I think the facts of this case clearly do fit with it comfortably within the cabinet that you're talking about. So there would be a way to read it differently. Here, however, the director's decision only resolved one liability issue, and that led to an obligation, a monetary obligation of $900,000. I think that BP's interpretation sort of flips that, and so you end up in a situation where even though there was only one issue, and it was resolved in favor of the interior, or the director's decision was to uphold the audit, nonetheless, when you get to judicial review, the monetary obligation, that $900,000, is split two ways. So under BP's interpretation of the statute, three quarters of that $900,000 is automatically given to BP, and then they have judicial review as to the remaining one quarter, roughly $218,000, where they can challenge that in federal court. What if the agency decision was written so that it went lease by lease and said, you owe this much for this lease all the way through for the relevant time frame, and then had a total of $900,000? Does that mean the ones that are under $10,000, there's no review? No, Your Honor. So we would say all obligations that lessees have ultimately stem from their leases, their contractual arrangements with the government. So a lot of what BP talks about in the brief is just the way that ordinary valuation, reporting, the handling of royalties happens. But that's not where we're at here. Where we're at here is that there was an audit by the state of Wyoming, and the state of Wyoming said BP owes additional royalties for this period. And then BP chose to appeal that, and that puts us into 1724H. And if you look at 1724H1, the first part of that provision, that says that you start with demands or orders by the secretary. So the premise of 1724H is that you have a demand or order, and that leads you into H2 where you have two, as Judge Phillips referred to, two results. One result is if it's less than $10,000, it's not worth anyone's time to look into this further. And so it's just deemed, decided in favor of the lessee. Well, that's where I'm a little confused in regards to the points that we're talking about. As I understood you to say a minute ago, that as to the lesser lease, I mean, lease money is lease money, and it may not mean much to anybody else, but even if the check's $10, it's $10. So as to the lesser claim, is it BP's position that they don't have to owe that portion of the $900,000? What happens to the amounts under the $10,000, under the statute? Well, Your Honor, I think BP's counsel can best explain this, but my understanding is what they're saying is that you have a director's decision, and I think there's very few pages of the appendix you have to look at to see this, but Appendix 2 of 3, the director says that BP must report and pay $905,000. Okay, so BP then filed an appeal with the board, and there were only a couple months left in the time period at that point, and the board said we're not going to get to this, we're not going to resolve this appeal within the couple months that are left before the period expires. But I think it's relevant to know what the board did say. This happened at the very end. Well, what's relevant to me is what happens to the money. So the money, the way the money splits, if you read it BP's way, then it counts every single lease, month, and product,  because it belongs to certain lessees. The money belongs to certain lessees who's under $10,000. It could be $7,000, it could be $50, whatever it is. But a big portion of that money belongs to small leaseholders. If you broke it up into those individual pieces, if you divide anything by three different denominators, then eventually you get small numbers. But all of these leases were held by BP. And BP's argument was, well, we transferred them to another company, and that company went bankrupt, so you've got to get the money from them. And the answer from the state of Wyoming, from the director, was no. And also from the federal district court was no, that the Mineral Leasing Act requires BP to pay that money. And yet, here we are. That's your argument that this is a single-issue case? That's correct. Okay. Is there a waiver issue on the other part? So, Your Honor, we haven't argued waiver in our brief. I do think that we pointed out that BP did not raise this or present this to the board before going into federal district court and raising this. And, in fact, if you look at the joint response by the parties to the board's order, that supplemental appendix 14, it more or less doesn't give any signal that BP was going to make this sort of argument. After that, the board issued an order presenting its view. Of course, it was not really handling the case at this point, but it said in supplemental appendix 20 to 21, it noted that this was a case that involved more than $10,000, so there was a deemed decision in favor of interior. And it noted the result of that, which is judicial review. And I think that's appropriate. When Congress set up this framework, it wasn't trying to punish interior for not managing all of these cases in a timely fashion. What it was trying to do is facilitate a lessee's having an opportunity to challenge the decision by the board or by the director and then go to federal district court if they disagreed with that result. And that's what BP got here. BP had that. So what's the answer? You say you didn't raise waiver, so you're not asserting it today? I'm sorry, Your Honor. Yes. So we didn't raise it, but I do think that BP should have presented that issue to the board initially. Well, doesn't the board have to know what's disputed to be able to render a decision? They did know what was disputed, and they knew that it was $905,000. That was the director's decision. That's appendix 203. That's the big piece. You just confused the heck out of me again. Is the issue in regards to the lessee's, the money paid, or is the issue does BP owe it or does some other company? I thought you were just telling me the issue that we have only before us is that does BP owe the obligation or does the other company? That's exactly correct, Your Honor. That's correct. Okay, so that's the issue, not the money. Not the amount of the money. In fact, I believe it's the director notes that the amount and calculations were not in dispute. No one was disputing that it's $905,000, $348,024. I'd like to turn your attention to 30 U.S.C. Section 1702.26. Yes, Your Honor. And that indicates that in order to pay, must assert a specific, definite, and quantified obligation claimed to be due by lease, production month, and monetary amount of the obligation. While that doesn't completely support BP's argument because it says nothing about product, does that suggest that we should be looking at this by monetary amount and the lease? Lease and month? No, Your Honor. And here's why. I actually think this directly supports our position. So there are two parts to the definition of order to pay in Section 1702.26. The parts are A and B. Part A says that the order to pay must, quote, assert a specific, definite, and quantified obligation claimed to be due. Now, we see that in Appendix 203. That's the director's decision, and it says that BP must pay $905,000. Then we get to end Part B. Part B says that the order must specifically identify the obligation. That reference of the obligation is to Part A. It's the same obligation that appears in the order. It's the $905,000, but it has to be identified by lease and product. Not product. I want to be clear on that. Lease and production month. We have that in Appendix 205. If you look at that chart, that chart does identify how you get to $905,000. It identifies it by lease and by month, which is what 26AB requires. So the director's decision exactly followed the formula that Congress set out in 1702.26A and B. And the result of that is an order to pay for $905,000. We just think it's contrary to both the plain text, but also to common sense to have a situation where the amount of dispute is clearly $905,000. And yet the effect of this results provision would be that BP only pays one quarter of those royalties. In fact, still gets the opportunity to challenge those in court, even though it's not here today telling you that the interior was wrong on the underlying liability issue, which is that it was liable for all of those royalties. Thank you. Unless the court has further questions. Thank you, counsel. Thank you. I'd like to just make a couple of points in response. First, the fundamental problem with Interior's argument is that it misconstrues the function of an order and the function of the director's decision in this case. These two agency actions are designed to enforce obligations that have already existed. Here, the order was issued in 2017, the director's decision in 2020, and each related to and sought to enforce royalty obligations, individual royalty obligations that were triggered by production from over 20 federal leases of three separate lease products in production months, seven different production months in 2012. So, again, this notion that the order and the director's decision generated a new obligation is improper. These two agency actions sought to enforce an existing obligation. Counsel, I need a little bit of help right here because the issue that I'm trying to focus is what is the decision that we're supposed to make. Opposing counsel is saying the only issue that we have before us is whether or not BP owes the money or the transfer that BP didn't get approval from them to another company that went bankruptcy. Is that the issue that you see we have before us? Your Honor, the threshold issue before the court is the meaning of the statutory phrase monetary obligation. And that underlying substantive issue is somewhat irrelevant at this point. What matters here is what that statutory phrase monetary obligation means because Congress provided that if the tier doesn't act at a certain timeframe, consequences happen. This is no different than a statute of limitations, which impose consequences for the passage of time on identities or companies or governments, anybody's ability to enforce obligations. Well, the end result for you then, you're saying it's all about the money. I'm saying it's all about how these individual obligations, which ones fall on which side of that $10,000 threshold. All right. And actually, the end result is all about the fact that what we have before us here is a deemed final decision of the Secretary of Interior, and that deemed final decision is silent. And we know very well that silent agency action is not defensible under the APA, which is the standard that the statute applies. But that argument is so – it would write out the entire meaning of the statute if we were to adopt that argument of yours, which would be the statute says if the Secretary doesn't act in 33-whatever-it-is months and it's over $10,000, we have appellate jurisdiction. And you would come in and argue, well, since the Secretary didn't issue a reasoned decision, even though you have appellate jurisdiction, you can't decide anything because you don't have anything to review. I mean, that would be crazy for Congress to have done that. Well, Your Honor, Congress took a different approach in several other statutes. In several other statutes, Congress elevated the inferior agency action to the final agency action. But that's just not what it did here. The statutory language here says the Secretary is deemed to have issued a final decision. Also, the – So Congress wants us to engage in a meaningless activity. Your Honor, in this case, the IVLA didn't provide any reasons that we can look at to determine whether the statutorily deemed final result is defensible. It may be the case that in some other case that's not currently before the court, the IVLA might issue some intermediary ruling, order something that would have some sort of reasons that the court could look at. But here it just didn't. Well, if they ruled within 33 months, this statute doesn't come into play. If they ruled within 33 months, this mechanism for a deemed final agency action doesn't come into play. So if we're talking about this section, it's because they didn't act. That's correct. So they have no detailed decision. That's correct. So in every instance where this statute comes into play, they don't have a detailed decision, and you would say we have no ability to perform appellate review because there's no detailed decision. Well, in this case, we don't have any detailed decision at all. We don't have the explanation at all. But as I mentioned, I think it's conceivable that the IVLA could provide certain reasons throughout an appeal without having decided the appeal. Judge Phillips, I'd like to also just address your waiver question briefly. There's no waiver here because this issue was not appropriate to raise this issue before now when we're sitting in federal court on judicial review. Also, because this is a jurisdiction requiring statutory provision that we're asking the court to weigh in on, the agency had no business interpreting that statutory provision. So raising it before the IVLA or before the O&R director, it was not the appropriate place to raise it because we're dealing with a jurisdiction requiring statute. Don't sit down yet, counsel. Okay. Let's just say for purposes of argument that your position is the correct position, and we're not here arguing about the point of who owes the money. But for your position, if you're correct and the statute applies for the 33 months, what does BP gain financially out of that? Do they not owe any of the $900,000? They only owe for the four that was above the $10,000? What happens to the money? Sure, Your Honor. I'm happy to address that question. Because we're dealing with individualized royalty obligations, we have to look at the amount of each one and apply that $10,000 threshold to the amount of each one. In this case, there are 11 individual obligations that were for a principal amount of over $10,000. That I understand clearly. Okay. What happens to all the other roughly 400 leaseholders? Do they get paid according to the formula that you set out of the money that Wyoming said you failed to pay? Or does BP get to keep that money? I apologize, Your Honor. I'm not sure that I understand your question. Each of the lessees who are under the $10,000 shows a specific amount of money that's owed to that numbered leaseholder. Do they get that money? Okay. So each individual royalty obligation in this case is owed to the federal government. The lessor is the same and lessee is also the same. It's either BP or Lynn and the district court upheld the agency. I'm not worried about the other company. I'm worried only about BP. Your argument is that you gave that over to the other company, so you don't owe it. But the issue is, the secretary is saying, no, you didn't get our permission, so you're still on the hook for $900,000. That's their position. I'm not sure if I'm understanding your question. I'm not sure I'm understanding my question either, but I need some help along the way. Sure. So each of the individual royalty obligations here collectively add up to a $900 amount that the director's decision and the order sought to enforce. All of those alleged underpayments were owed or are alleged to be owed to the Department of the Interior by BP. So we have a single lessee and a single lessor, and then we just have what happens to that amount. Because we're dealing with individual royalty obligations, we have to apply that $10,000 threshold to each one, and in this case, the result of that is that 11 of those individual royalty obligations are deemed decided in Interior's favor, and the remainder of them are deemed decided in BP's favor. So it's in your favor. You don't owe the money. So the government can't collect the money, just like if the government was time barred under a statute of limitations from collecting royalty obligations. Okay, now you've got me down. And maybe you can summarize it by answering this and making sure I'm correct. BP doesn't dispute that it owes $905,000 by the royalty laws. What it says is by operation of this statute, we don't have to pay $700,000 of the money that we owe, and that's Congress's intent. Is that basically the argument? BP is no longer challenging the issue, the assignment issue. You agree that $905,000 is owed. In other words, you're not saying they miscalculated this. The $905,000 is solid. The $905,000 is what the government alleges is owed. But you concede that that much is owed, don't you, or not? You haven't contested it individually and said, no, only $638,000 is owed. The $905,000 is solid. $905,000 is the amount that the government alleges is owed, and BP no longer challenges that amount. However, this is just like a statute of limitations. All right, we've gone way over. I appreciate your time, and both of counsel's arguments are very helpful to us. Counselor, excuse the case is submitted.